# Louisville & Nashville Railroad Company v. Stewart's Administrator.

(Decided February 24, 1925.)

## Appeal from Bullitt Circuit Court.

1. Appeal and Error—Certified Stenographer's Transcript, Approved by Court, Held Sufficient as Bill of Exceptions.—Stenographer's certified transcript containing evidence, objections, exceptions, avowals relating thereto, court's rulings, and instructions offered, given, and refused, approved by court and filed as bill of exceptions, held sufficient as such.

2. Commerce—Painter of Elevator Shaft Used for Handling of Coal for Engines Engaged in "Interstate Commerce" Held Within Federal Employers' Liability Act.—One injured while engaged in painting elevator shaft used for raising coal to top of chute, from which it was loaded into engines used in both interstate and intrastate commerce, held engaged in "interstate commerce" at time of his injury and within federal Employers' Liability Act (U. S. Comp. Stats., sections 8657, 8665).

3. Master and Servant—Assumption of Risk Defense Under Federal Employers' Liability Act.—Under federal Employers' Liability Act (U. S. Comp. Stats., sections 8657, 8665), assumption of risk is still available as defense unless injury grows out of violation of some federal statute enacted for safety of employees.

4. Master and Servant—Risk of Master's Negligence Not Assumed.—Servant never assumes risks growing out of master's negligence, unless he knows of want of care and consequent danger, or want of care and danger therefrom are so obvious that ordinarily prudent persons in his situation would observe the one and appreciate the other.

5. Master and Servant—Employee Held to Have Assumed Risk of Injury by Coal Bucket.—Employee, within provisions of federal Employers' Liability Act (U. S. Comp. Stats., sections 8657, 8665), engaged for several days in painting elevator shaft while buckets for handling of coal were continuously passing up and down, held to have assumed risk of such injury, notwithstanding employer might have made work more safe by stopping buckets.

J. F. COMBS and WOODWARD & WARFIELD for appellant.

C. P. BRADBURY and A. E. FUNK, JR., for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

This action was brought under the federal Employers' Liability Act to recover damages for the death of H. B. Stewart, and the appeal is from a judgment in favor of his administrator for $12,000.00.

At the ouset we are met by a motion to strike the bill of exceptions. The argument is, that only the stenographer's transcript of the evidence was filed, and this was not a sufficient bill of exceptions within the meaning of the Code. It appears, however, that the transcript contains not only all the evidence, as well as the objections, exceptions, and avowals relating thereto, together with the court's rulings thereon, but also all of the instructions offered, given and refused. In other words, it contains all that is necessary in a bill of exceptions, and having been properly certified by the stenographer, approved by the court, and filed for the purposes of an appeal by an order of court, and intended as a bill of exceptions when so filed, it will be treated as such on an appeal. L. & A. R. Co. v. Philipps, 148 Ky. 49, 145 S. W. 1105; Sinclair's Admr. v. I. C. R. Co., 100 S. W. 236, 30 Ky. Law Rep. 1040.

The facts are few and simple. Appellant, as part of its coaling station at Lebanon Junction, maintains an elevator shaft. The shaft is an open steel structure of considerable height. Inside the shaft two buckets are operated. When at the bottom they are loaded with coal, then hoisted and dumped into the chute at the top of the shaft. As the loaded bucket goes up, the empty bucket goes down. After being placed in the chute the coal is loaded on engines that are used in hauling both interstate and intrastate trains. On the occasion of the accident Stewart was engaged with two others in painting the shaft at a point some distance from the ground. He was struck by a descending bucket and received injuries from which he died.

It is first insisted that Stewart was not employed in interstate commerce, and that it was error to try the case under the federal Employers' Liability Act. The question is a close one, but it seems to us that the case of Erie Railroad Co. v. Collins, 253 U. S. 77, 64 L. ed. 790, is controlling. There it was held that a servant of an interstate carrier was employed in interstate commerce while engaged in starting a gasoline engine at the pumping station, which was used to pump water into a tank from which it was supplied daily to engines used in carrying both interstate and intrastate freight. The only difference between the two cases is, that Stewart was not engaged in operating the shaft, but was engaged in work necessary for its maintenance and proper repair. As operation cannot continue for long without necessary

repairs, it is at once apparent that the work of preserving an instrumentality of interstate commerce in actual use at the time is just as much a part of that commerce as the operation of the instrumentality itself. We therefore conclude that the case falls within the provisions of the federal Employers' Liability Act.

The question of liability is more serious. The petition alleged that Stewart's death was due to the company's failure to furnish him a safe place for work. There was evidence that a safer method of doing the work was to stop the bucket and place boards on the inside of the shaft for the use of the painters, and the case went to the jury on the theory that if there were two ways of doing the work, one safe and the other unsafe, and the company adopted the unsafe way, it was liable. It must not be overlooked that under the federal Employers' Liability Act assumption of risk is still available as a defense unless the injury grows out of a violation of some federal statute enacted for the safety of employes. Coons v. Louisville & N. R. Co., 215 S. W. 946, 185 Ky. 741. It is sometimes said that a servant assumes only the ordinary risks of his employment and never assumes risks arising from the master's negligence; but this statement of the rule is entirely too broad.

Correctly stated the rule is, that the servant never assumes risks growing out of the master's negligence unless he knows of the want of care and consequent danger, or the want of care and danger therefrom are so obvious that an ordinarily prudent person in his situation would observe the one and appreciate the other. Hines v. Cox, 192 Ky. 94, 232 S. W. 373; Gila Valley, G. & N. R. Co. v. Hall, 232 U. S. 94, 101, 58 L. Ed. 521, 524, 34 Sup. Ct. Rep. 229; Jacobs v. Southern R. Co., 241 U. S. 229, 235, 60 L. ed. 970, 976, 36 Sup. Ct. Rep. 588; C. & O. Railway Co. v. DeAtley, 241 U. S. 310, 60 L. ed. 1016; Erie R. Co. v. Purucker, 244 U. S. 320, 324, 61 L. ed. 1166, 1167, 37 Sup. Ct. Rep. 629; Boldt v. Pennsylvania R. Co., 245 U. S. 442, 62 L. ed. 385. Even if it be conceded that in the exercise of ordinary care the company should have stopped the operation of the buckets while the painters were engaged in painting the inside of the shaft, Stewart went to work under the conditions as they were, and had been employed on the particular job for three or four days. At the time of the injury he was standing on the outside of the shaft. The buckets were constantly ascending and descending. They were right before his

eyes, and he could not help seeing them. The danger of being injured, if he continued to work with any portion of his body inside the shaft while one of the buckets was passing, was perfectly obvious to a person of even slight understanding. In view of these conditions there is no escape from the conclusion that the risk, whether ordinary or extraordinary, was assumed by Stewart. A stronger case for the injured employe is Southern Pacific Co. v. Berkshire, 254 U. S. 415, 65 L. Ed. 335, where it was held that a railway engineer, who was struck by a mail crane while leaning out of the cab window, assumed the risk. In that case there was some ground for the contention that the engineer should not have been charged with knowledge and appreciation of the danger because of the other duties he was required to perform, and the great difficulty of keeping the crane in mind at the time and place of passing; but in this case the buckets ascended and descended at regular intervals, and being plainly observable, there was no uncertainty as to the time or place of their passing.

Judgment reversed and cause remanded for a new trial consistent with this opinion.