## Boone, Foreman & Lackey v. Wahl.

(Decided May 24, 1929.)

C. C. GRASSHAM for appellant.

WHEELER & HUGHES for appellee.

Opinion of the Court by Judge Dietzman—Affirming.

This is the second appeal of this case. It is a common-law action, which was tried by the court without the intervention of a jury. On the former appeal the judgment was reversed, with instructions to the lower court to separate its findings of law and fact, the merits of the controversy not being discussed or decided. 226 Ky. 773, 11 S. W. (2d) 915. On the return of the case, the lower court in accordance with the directions of this court separated its findings of law and fact and again entered judgment for the appellee in so far as the appellant sought any recovery for a real estate commission but for the appellant on the other matters involved in the litigation. From this judgment appellant has prosecuted this appeal. Appellee has prosecuted no cross-appeal, so that all that is now involved is whether the appellant was entitled to the real estate commission it sought or not,

Appellant is a corporation engaged in the real estate business in the city of Paducah. In June, 1927, the appellee was very anxious to sell some property he owned in Paducah, which was known as 311 and 313 Broadway street. At that time the appellee was engaged in the erection and equipment of a new laundry and he was not having an easy task in financing it. He was then very hard pressed for liquid capital, and in order to raise it he was exceedingly anxious to sell the Broadway property. Along about the 1st of June he sent for Mr. Pierce Lackey, who was employed by the appellant, and through him orally employed his company to sell the Broadway property for $60,000. Mr. Lackey seems to have the idea that his oral contract of employment to sell the property was for a period of a year, but it is plain that this is only his conclusion of what the law implied solely by reason of an employment even though no time was mentioned when the contract was made. His idea, of course, is erroneous. He does not state that he and Mr. Wahl agreed upon any definite time within which he should sell this property, and as he knew Mr. Wahl's circumstances he could hardly have reasonably thought that Mr. Wahl was willing to wait as much as a year for him to sell this property. Under the evidence, the contract of employment was clearly for an indefinite period. Mr. Lackey testifies that he had the exclusive agency to sell the property. Mr. Wahl does not deny this.

We conclude therefore that Mr. Wahl employed Mr. Lackey's company as an exclusive agent to sell the property but for no definite time.

Thereafter Mr. Lackey got busy in the effort to dispose of the property. He testifies that very soon after he was employed he endeavored to interest Messrs Ezzell and Cave, who were also in the real estate business in Paducah, in the purchase of this property, and that they told him they could not handle it unless he secured a 30-day option. He says that he then told Mr. Wahl about this, but that Mr. Wahl refused to give the option, since he did not desire to have his property tied up for any period of time whatever, but wished to be free to dispose of it quickly if opportunity presented itself. Mr. Lackey says that he then no longer endeavored to interest Messrs. Ezzell and Cave. Mr. Wahl, however, testifies, in substance, that Mr. Lackey never told him about Ezzell and Cave, and that the first he ever knew about these gentlemen being interested in the property was when Mr. Cave along towards the latter part of June or early part of July came into his laundry and broached the subject to him about buying the property, and that he then told Mr. Cave he would not discuss the subject further with him until Mr. Lackey had had a further opportunity to dispose of the property. Of course, whether Wahl knew that Lackey had ever spoken to Messrs. Ezzell and Cave about the Broadway property was a question of fact upon which Lackey testified one way and Wahl the other way. Neither the appellant nor its agent was ever able to get anybody to offer $60,000 for this property. Lackey testifies, however, that along towards the middle of July he was authorized by Mr. Wahl to offer the property for $58,000, and that he returned the next morning with a written proposition from a purchaser who was ready, able, and willing to buy the property at this figure, which Mr. Wahl refused. Mr. Wahl, however, testifies that he never agreed to take a cent less than $60,000 for the property. Again we have a question of fact upon which Mr. Wahl testified one way and Mr. Lackey another. Shortly after Mr. Wahl rejected the $58,000 offer above mentioned, he gave to Messrs. Ezzell and Cave an option to sell the Broadway property for $60,000 net to him. Later this option was carried into a contract whereby Wahl agreed to convey the property to Messrs. Ezzell and Cave for $60,000. However, when the deed came to be executed, it was made to a client of Messrs. Ezzell and Cave.

When the appellant discovered that Wahl had sold this property it brought this suit against him to recover, first, an open account for some insurance premiums; secondly, a fee for services it alleged it had rendered the appellee in the attempt to procure a bond issue on his laundry; and, lastly, a real estate commission for procuring a purchaser for this property who was ready, able, and willing to buy it, which is all that is at present involved. The court after hearing the evidence found as a matter of fact that the appellee never authorized or agreed to accept any sum less than $60,000 for the Broadway property, which in effect is a finding against appellant and Lackey on the disputed question of fact as to whether Wahl had ever agreed to take $58,000 or not. The court further found that the appellant never furnished to the appellee a purchaser who was ready to buy the property on the terms proposed by the appellee, which, also, in effect is a finding against appellant and Lackey on the question of fact whether or not he ever informed Wahl of his effort to interest Ezzell and Cave in the purchase of this property. On these findings of fact the court adjudged that the appellant's petition in so far as it sought a commission for finding a purchaser for this Broadway property be dismissed.

So far as the lower court's findings of fact are concerned they must in the state of this record be accepted by this court. Where the law and facts are submitted to the court, its findings of fact are to be treated as the verdict of a properly instructed jury and will not be disturbed unless palpably against the evidence. Bell v. Wood, 87 Ky. 56, 7 S. W. 550; Chesapeake & O. R. Co. v. Williams, 156 Ky. 114, 160 S. W. 769, 49 L. R. A. (N. S.) 347. The findings of fact by the lower court here are not flagrantly or palpably against the evidence and hence must be accepted by us. We therefore eliminate at once appellant's contention that it is entitled to a commission because it found a purchaser who was ready, able, and willing to give $58,000 for this property, since that was not the terms on which the appellee was ever willing to sell this Broadway real estate. We are then left to consider only whether or not the appellant is entitled to any commission because the appellee sold this property to Messrs. Ezzell and Cave. Again, in the consideration of this question we must accept the finding of fact by the lower court that neither appellant nor Lackey ever informed Wahl of any effort on their part to inter-

est Messrs. Ezzell and Cave in the purchase of this property. In the case of Carter v. Hall & Martin, 191 Ky. 75, 229 S. W. 132, we said:

"When land is listed with a broker, who is to receive a commission for making a sale, or find a purchaser, and no period is stipulated in the contract within which he is to have the exclusive privilege of making a sale of it, the party listing the land may revoke the contract at any time, and a sale of the land by him is treated as a revocation, and although an exclusive agency is given the broker, if there is no specified time fixed in the contract within which he has to exercise his agency and no exclusive privilege of sale is given him, it is held that such a condition in a contract does not prohibit the owner of the land from making a sale and terminating it, and that such a condition in it only prohibits the owner from effecting a sale through some other agent."

As no definite period of time was given the appellant within which to make a sale of the Broadway property and all that it had was an exclusive agency to sell it within an indefinite period, the appellee had a right to revoke such agency at any time and a sale by him of the property was such a revocation. However, he could not, of course, sell the property to a purchaser furnished to him by the appellant before the revocation and thus escape a commission. But in order for such liability to be fastened upon the appellee he would have to know at the time he was making the sale that the party to whom he was selling had been procured by the appellant. In the case of Offutt & Oldham v. Winters, 227 Ky. 56, 11 S. W. (2d) 979, we held that an owner of real estate, not knowing of the efforts of a broker engaged by him to sell his property to interest the buyer to whom the owner is about to sell the realty, may assume that he alone is making the sale; that where the owner is ignorant of the efforts of the broker he has a right to act on the assumption that he alone is making the sale; that the duty is upon the broker to inform the owner of the purchaser he has found; and that if he fails to do this and the owner makes the sale in ignorance that the purchaser has been found by the broker, the owner is under no liability to pay the broker any commission. Applying these principles to this case and accepting the findings of fact of the lower

court, as we must, we find that Wahl had the right to revoke the employment of the appellant and to sell the property to Ezzell and Cave without becoming liable to appellant for any commission, since he did not knowingly sell the property to a purchaser procured by the appellant before its authority was revoked. The judgment of the lower court being in accord with these views, it is affirmed.